## Harold Fuel Co. v. Hatcher et al.

May 19, 1950.

Edward P. Hill, Judge.

O. T. Hinton, Hinton & Rice and Combs & Combs for appellant.

Woodrow Burchett for appellees.

JUDGE LATIMER—Affirming.

Appellees, heirs-at-law of Henry Hatcher, instituted this action against appellant, Harold Fuel Company, to recover a haulage royalty of one-cent per ton for coal hauled over the Hatcher tract of land.

Appellees, and their predecessors in title, executed deed of conveyance to Harold Coal and Coke Company granting certain mining rights and privileges in the land.

Appellant, by mesne conveyances from the Harold Coal and Coke Company, became owner of these rights and privileges. We are concerned here with the construction of a portion of that conveyance, viz: the ex-

clusive right of way over said land and every part thereof, to construct, maintain, and keep in repair and operate any and all railroads, tramroads, haulroads, mines, canals, waterways, dams and coke ovens deemed necessary or convenient by the party of the second part, successors or assigns to mine, manufacture, store, or remove said product from or out of said land, or taken from or out of any other land owned, or in which the aforementioned substance and product is owned, leased or otherwise held by the party of the second part, successors, vendees and assigns. However, for all of such substance and product taken from or out of other lands, the parties of the first part are to be paid at the rate of one (1c) cent per ton for such privilege.''

Appellant concedes that this haulage tax is due on all coal taken from other lands owned by it, or in which it has an interest, if hauled through and over the land of appellees. Reliance is placed upon that portion of the above quoted portion ''or taken from or out of any other land owned, or in which the aforementioned substance and product is owned, leased or otherwise held by the party of the second part, successors, vendees and assigns.'' It appears that appellant is buying coal from about 50 different mines, processing same and loading it on C. & O. cars for distribution. It is insisted by appellant that it was not within the contemplation of the parties that it should pay this one-cent per ton haulage royalty for coal that it purchased from other mines, and to place such construction on the above portion of the deed would in fact be making a new contract for the parties.

On the other hand, appellees charge that appellant has become interested in approximately 50 truck mines in that vicinity ''in varying degrees;'' that it ''leased and subleased coal lands to certain of these truck mines, furnished them supplies and equipment and agreed to purchase and process the coal the truck mines produced and delivered to its tipple,'' and, consequently, should pay the one-cent haulage royalty under the provisions above set out.

In the trial of the case only the testimony of Mr. Dan Knausz, President, General Manager, and principal stockholder of appellant, testified in the cause. There seems to be no contention as to the amount of coal

hauled from other lands and no conflict between the parties other than the construction of the above portion of the deed.

Upon trial, appellees obtained judgment in the sum of $4,094.14, which was the haulage charge at the rate of one cent per ton on 409,414.4 tons of coal purchased by appellant from these several truck mines.

It is undisputed that the tipple is constructed on the land of appellees. In order to reach the tipple the coal must be hauled in trucks over the surface of appellees' land. According to the unchallenged statement of appellees, after the coal is dumped into the tipple it is transported thence over another portion of appellees' land and loaded into railway cars of the C. & O. Railroad for shipment.

Looking at the provisions above, it is obvious that appellant had the right to construct the tipple and other buildings on the land of appellees. It had the right to the use of these facilities through and over the land of appellees, in addition to mining the coal on appellees' land for the transporting of coal from other lands of appellant. This was a use and privilege granted appellant. For its use and benefit appellant constructed a road to the tipple, over which these truck mines might deliver the coal to appellant. Obviously, appellant's construction of the contract was that it had a right to build the road, as evidenced by this question and answer:

"Q. 59. Did you or anyone for you ask permission from any of the Hatcher heirs to construct this road?

"A. No, we didn't for the reason that we have all mining rights and we have other rights set out in that deed—slate dumping rights. We didn't feel it necessary."

It is argued by appellants that appellees had the right of enjoining these individual truckers from entering this roadway, and that a cause of action, if any they had, was against the truckers and not against appellant. It appears to us that appellant is most inconsistent in maintaining in one breath that it had a right to prepare for the hauling of coal over the land of appellees, to buy the coal so hauled and dump it in its tipple, then, after processing, haul the coal again over lands of ap-

pellees to a point of shipment, and then in the next breath say that this was the act of the truckers, who could be enjoined as trespassers. It is clear that the purchasing process commenced before the coal entered the land of appellants, and was consumated when the coal was weighed. We think the right to use this land for the transportation of coal over the land, as done here, was clearly what the parties to the contract contemplated.

The judgment is affirmed.